UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.:

GREGORY RIDEAU,

Plaintiff,

v.

CITY OF WEST PALM BEACH, a
Florida municipal corporation, SARAH J.
MOONEY and THEODORE SWIDERSKI

Defendants.

_____

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, GREGORY RIDEAU, by and through undersigned counsel, sues Defendants,

CITY OF WEST PALM BEACH, SARAH J. MOONEY and THEODORE SWIDERSKI, and

alleges:

### INTRODUCTION

1.      This is an action involving the violation of Plaintiff's federally protected rights

under Title VII of the Civil Rights Act of 1964 for employment discrimination by the Defendant

and its employees, and for violations of Florida law, including violations of the Law Enforcement

Officers' Bill of Rights, Florida Statutes Chapter 112 and for violation of Florida's Civil Rights

Act (FCRA) including retaliation after lodging complaints, a protected activity.  The aggregate

amount of damages claimed by the Plaintiff is in excess of $75,000.

### JURISDICTION AND VENUE

2.      Jurisdiction of this Court is specifically conferred by 42 U.S.C. § 2000(e)(5)(f)(3).

3.      Plaintiff's claims for relief are predicated, in part, on 42 U.S.C. § 2000(e)(2), which

authorizes actions to redress an employer's discrimination against any individual with respect to

1

his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin and 42 U.S.C. § 2000(e)(5)(k), which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 2000(e)(5).

4. Venue is appropriate in this Court as the illegal acts alleged to have been committed by Defendant against Plaintiff occurred wholly within Palm Beach County, Florida.

5. All conditions precedent to the filing of this action have occurred; Plaintiff dual filed a charge of discrimination with the U. S. Equal Employment Opportunity Commission, (hereinafter "EEOC") and the Florida Commission on Human Resources (hereinafter "FCHR"), against the Defendant CITY on September 20, 2019 and received a right to sue letter from the EEOC on or about September 25, 2020. (See EEOC's Notice of Right to Sue Letter, attached and incorporated herein as Exhibit "A").

6. State law claims are brought pursuant to the concurrent jurisdiction of this Court.

**PARTIES**

7. Plaintiff, GREGORY RIDEAU ("RIDEAU"), is a United States citizen and a resident of the State of Florida, where he lives in Martin County and is otherwise *sui juris*.

8. The CITY OF WEST PALM BEACH ("CITY") is a municipality providing government services to its more than 111,000 residents who are located in Palm Beach County, Florida. The CITY employs approximately 1700 people including 311 sworn law enforcement officers of the West Palm Beach Police Department (hereinafter "Police Department").

9. SARAH J. MOONEY ("MOONEY") is the former Chief of Police for the CITY and is currently an Assistant Chief of Police with the Police Department and at all times material was an employee of the CITY. MOONEY is a United States Citizen and a resident of the state of Florida, who lives and works in Palm Beach County.

10.     THEODORE SWIDERSKI ("SWIDERSKI") is a Captain with the Police Department and at all times material was an employee of the CITY. SWIDERSKI is a United States citizen and a resident of the State of Florida, who lives and works in Palm Beach County.

**UNDERLYING FACTS**

11.     GREG RIDEAU is a fifty-year-old United States Citizen who is African American and is a member of a protected class.

12.     RIDEAU was hired by the CITY on February 19, 1996 as a police officer, earning a salary and benefits package that includes both health insurance and retirement benefits.

13.     After four years with the CITY, RIDEAU applied for a position as a K-9 Officer. He was told by then Captain Patrick Maney he would never become a K-9 Officer because it was a "high-liability" position and Black officers did not get those positions.

14.     To this day, the CITY does not have, and has never employed, an African American as a K-9 Officer.

15.     RIDEAU is currently employed as a Lieutenant by the CITY.

16.     Deanna Morrell Rideau, RIDEAU's wife, is also a sworn law enforcement officer currently employed as a sergeant by the CITY. Deanna Rideau is a forty-two-year-old Caucasian female, who began her employment with the CITY on June 2, 2002.

17.     Greg and Deanna Rideau met through work at the Police Department, dated and were married on July 3, 2010.

18.     Throughout the course of their courtship and even following their marriage, RIDEAU and his wife received comments and criticism for their interracial relationship.

19.     Following their marriage becoming public within the CITY, RIDEAU has been discriminated against due to his race and interracial marriage.

20.     Shortly after their marriage, Deanna Rideau was told by Sergeant Gary Smith "Blacks and Whites shouldn't marry." She was also told by Lieutenant Tom Wills she was "tainted and no White man would touch" her now.

21.     While Deanna Rideau has been subjected to negative comments, she has not received the same targeted discriminatory actions against her as RIDEAU has for their relationship.

22.     The targeted discrimination has come in a continuous series of acts taken by command staff within the Police Department, the Palm Beach Police Benevolence Association (hereinafter "PBA") as well as other CITY management, as detailed below.

**Hindrance and Impediments to Promotion**

23.     Beginning in July of 2016 and continuing until his eventual promotion on December 20, 2019, the CITY actively prevented and delayed RIDEAU's promotion to Lieutenant despite his ranking first on the list of officers eligible for promotion and despite allowing similarly qualified officers to obtain timely promotions. These actions were done with the approval and knowledge of former chief of police, Defendant MOONEY.

24.     In July of 2016, the dates for the Lieutenant's Exam were surreptitiously changed by the CITY in violation of the Collective Bargaining Agreement with the PBA, the effect of which was to prevent only RIDEAU and Deanna Rideau from taking the exam. RIDEAU and Deanna Rideau would have been eligible to sit for the promotional exam had the exam been administered on the dates listed pursuant to the Collective Bargaining Agreement.

25.     West Palm Beach Police Officer and CITY employee Lieutenant Joseph Herb instructed PBA representatives not to assist RIDEAU with any potential grievance regarding his right to sit for the promotional exam in 2016.

26.     Lieutenant Herb worked in concert with Chief MOONEY to impede RIDEAU from being promoted

27.     Once RIDEAU overcame the lack of PBA assistance and was able to sit for the exam, he missed eligibility for promotion by 1 point. The CITY denied RIDEAU's request to curve his score, allowing for promotion. However, the CITY gave a similarly qualified White Officer the benefit of a 22-point curve on the assessment, so that the White Officer could be promoted ahead of RIDEAU.

28.     After RIDEAU made complaints of disparate treatment in the promotion process to the CITY, the CITY conditioned his promotion to Lieutenant on his execution of a Waiver and Release of Liability. RIDEAU never agreed to sign the Waiver and Release of Liability[1].

29.     On information and belief, no other officer's promotion to Lieutenant was similarly conditioned on the execution of a Waiver and Release of Liability.

30.     Having prevented RIDEAU's promotion to Lieutenant in 2016, MOONEY and other supervisors in the Police Department began to target RIDEAU's credibility and eligibility for promotion with internal affairs investigations.

**Harassment through Internal Affairs Investigations**

31.     On or about March 6, 2018, the CITY began Internal Affairs Investigation 18-001 (hereinafter "IA 18-001") for sexual harassment against RIDEAU. The accuser, Officer Elainy Ravelo-Marte, was a subordinate of RIDEAU whom he had previously requested be removed from his undercover unit due to lying in connection with the theft of drug money from a crime scene. During IA 18-001, SWIDERSKI unlawfully conducted said investigation by violating RIDEAU's

---

[1] In 2019, newly appointed Chief of Police Frank Adderly promoted RIDEAU to Lieutenant, albeit several years after he should have been rightfully promoted based on his seniority, exam scores and performance with promotional assessments.

Law Enforcement Officers' Bill of Rights in withholding audio recordings from RIDEAU and surreptitiously recording RIDEAU in violation of Florida Statutes 112.532 and 934.03 (2018).

32.     SWIDERSKI conducted IA 18-001 as the Captain in charge of Internal Affairs for the Police Department, with the knowledge and approval of Chief of Police MOONEY.

33.     RIDEAU, who was accused of sexual harassment, received disparate treatment from the Defendants because of his race, noticeably in the lack of scrutiny to the allegations made by Officer Ravelo-Marte. Unlike similar sexual harassment claims made against other white officers, the accuser, Officer Ravelo-Marte, was assisted in her complaints by SWIDERSKI, MOONEY and other command staff, and the accuser was not challenged on her areas of clear bias and inconsistent allegations made in her complaint. Further, a witness for the accuser was not sequestered from testimony of other witnesses, including the accuser, prior to giving their own testimony. During the pendency of IA 18-001, RIDEAU was summarily removed from his position as Sergeant of the Investigative Services Bureau, Organized Crime Section by MOONEY, thus violating Section 112.532(4)(a), Fla. Stat. (2018). At the conclusion of the investigation, MOONEY imposed an 80-hour suspension and remedial training upon RIDEAU.

34.     In April 2018 the same accuser, Officer Ravello-Marte, with the support of SWIDERSKI and MOONEY, alleged RIDEAU was violating Defendant CITY's compensation, special events, extra duty details, and outside employment policies and regulations (hereafter "overtime fraud allegations"). Officer Ravello-Marte reported these violations approximately nine (9) months after they allegedly occurred.

35.     On or about April 16, 2018, the CITY actively encouraged the United States Department of Justice (hereinafter "DOJ") Organized Crime Drug Enforcement Task Forces (hereinafter "OCDETF") to conduct an Internal Process and Assessment Review (hereinafter

"IPAR") for fiscal years 2017 and 2018 for seven agreements the Police Department had with OCDETF.

36.    The IPAR consisted of site visits to the Police Department in order to conduct internal audits of the agency's overtime documentation.  Upon information and belief, the CITY intended to use the IPAR to further target RIDEAU and potentially corroborate Officer Ravello-Marte's overtime fraud allegations.

37.    Deanna Cockerill, an Executive Officer with OCDETF, conducted the IPAR in the Police Department.  Ms. Cockerill met Captain Brain Kapper (RIDEAU's captain in his chain of command) on April 16, 2018, according to the Police Department's visitor log.  While Ms. Cockerill's IPAR Findings and Recommendations named four officers who were not in compliance with OCDETF overtime agreements, RIDEAU was not mentioned anywhere in the report.

38.     Ms. Cockerill sent her IPAR Findings and Recommendations by e-mail to RIDEAU's Lieutenant, Sterling Kihei, further notifying command staff of no evidence overtime fraud allegations by RIDEAU.

39.    Nevertheless, on or about October 30, 2018, SWIDERSKI and Investigator Brian McDaniel, both with the Police Department's Internal Affairs Division, met with Assistant State Attorney Brian Fernandes and Sergeant Daniel Boland of the Fifteenth Judicial Circuit State Attorney's Office Public Corruption Unit in order to seek the criminal prosecution of RIDEAU for theft of overtime or detail pay.  SWIDERSKI was aware of the OCDETF IPAR findings but failed to provide them to the State Attorney's Office, knowing they would clear RIDEAU of any wrongdoing.  The actions of SWIDERSKI were known by Chief of Police MOONEY and constructively known and approved by the CITY.

40.     The State Attorney's Office properly declined to press charges against RIDEAU, citing a lack of evidence.

41.     Despite the findings of the OCDETF IPAR and the rejection of any prosecution by the State Attorney's Office, the CITY initiated another targeted internal affairs investigation against RIDEAU in December 2018, City of West Palm Beach Police Department Administrative Investigation 18-056 (hereinafter "AI 18-056"), for violating the CITY's compensation, special events, extra duty details, and outside employment policies.

42.     SWIDERSKI conducted AI 18-056 as the Captain in charge of Internal Affairs for the Police Department, with the knowledge and approval of Chief of Police MOONEY, who ordered the investigation to commence on December 3, 2018.

43.     As noted above, the CITY, SWIDERSKI and MOONEY were aware that OCDETF conducted an IPAR of officer overtime in April 2018 which exonerated RIDEAU of the overtime fraud allegations.  But the IPAR Findings and Recommendations, which exonerated RIDEAU of overtime fraud allegations, was not provided to RIDEAU during AI 18-056.  Once again, the CITY violated RIDEAU's Law Enforcement Officers' Bill of Rights during its investigation by withholding the IPAR audit from RIDEAU in violation of Florida Statute 112.532 (2018).

44.     RIDEAU was not aware of Ms. Cockerill's IPAR Findings and Recommendations exonerating him of Officer Ravello-Marte's overtime fraud allegations until well after MOONEY sustained the allegations in March of 2019.

45.     Without the benefit of the exculpatory IPAR audit, RIDEAU and his wife, Deanna Rideau, received discipline from the CITY for the known false allegations of overtime fraud, while a similarly situated third officer who allegedly violated the same policy was not punished.

46.     The series of frivolous and knowingly false allegations, which lead to investigations against RIDEAU by the CITY, orchestrated by MOONEY and SWIDERSKI, prevented his promotion in 2018, and in addition to loss of wages and promotion in title, caused damages in the form of loss of dignity and mental anguish.

47.     As a result of the ridicule of these investigations, in April of 2018, RIDEAU began to seek treatment with a mental health counselor to help cope with the work environment he experienced at the CITY. RIDEAU subsequently went on intermittent FMLA, to assist in his mental health therapy.

**Forced Fit-for-Duty Exam**

48.     In another act in furtherance of a scheme of retaliation by the CITY against RIDEAU, in late 2018 Captain Joseph Ahern asked the Director of the CITY clinic, Dr. Monica Coakley, to alter RIDEAU's medical file to find him unfit to carry a firearm and require he have a psychological evaluation. The actions of Captain Ahern were known to Chief of Police MOONEY and were constructively known and approved by CITY.

49.     On June 11, 2019, Jennifer Chirpczuk, the Benefits Officer in the CITY's Human Resources Department, informed RIDEAU he must complete a psychological evaluation with a doctor in Martin County, Florida. RIDEAU was instructed to bring all of his Family Medical Leave Act (hereinafter "FMLA") paperwork with him to the evaluation. This evaluation was not part of RIDEAU's intermittent FMLA approval, as that evaluation had already been completed and provided, but was in fact a separate fit for duty evaluation, ordered by the CITY without cause or justification for such an evaluation.

50.     On this same date, RIDEAU learned the CITY unlawfully obtained his private healthcare information, including psychological treatment records. The CITY then ordered a *fit for*

*duty* examination without justification or cause for same, presumably relying on the unlawfully obtained FMLA treatment records.

51.    RIDEAU was subsequently informed by a fellow officer, Detective Christian Tomas, that he had received RIDEAU's full FMLA file via an email from Sophia Logan, an employee with York Risk, the risk management group administering the CITY's FMLA benefits.

52.    No opinion or diagnosis from any medical professional has ever held RIDEAU unfit to serve as a law enforcement officer or unfit to carry a firearm.

**Retaliation Following EEOC Charge**

53.    As a result of the above targeted actions taken against him by the CITY, RIDEAU filed his formal charge on September 20, 2019. Shortly thereafter, employees of the CITY (fellow officers) learned of RIDEAU's formal discrimination charge and began further and additional retaliation against RIDEAU in the form of numerous unwelcome and harassing acts. These acts, known and endorsed by RIDEAU's supervisors, include, but are not limited to:

a.    On or about October 19, 2019, Lieutenant Joseph Herb was at a meeting with six (6) Police Department Officers and a PBA Attorney when he became visibly angry that RIDEAU's arbitration regarding IA 18-001 had been cancelled and began to scream that he hated RIDEAU, saying, "Fuck Rideau, I hate him."  Witnesses described his conduct as threatening towards the PBA attorney.  Lieutenant Herb said RIDEAU should have been fired. Learning of these harassing comments, and how they are widely known through the Police department, caused RIDEAU increased stress and anxiety at work, by calling into question his authority to supervise his subordinates and interfering with morale and his ability to work side by side with fellow officers.

b.    Sergeant Gary Smith complained to the administration that RIDEAU had hired Sergeant Deanna Rideau for patrol on RIDEAU's shift and had not advertised the opportunity in

"EDS," which is the Police Department's internal tracking system for available overtime opportunities. Upon information and belief, the CITY's past practice did not require postings in EDS, and supervisors were free to hire their friends for the overtime work. The complaint of Sergeant Smith undermined RIDEAU's authority as a Lieutenant and has negatively affected Rideau's ability to supervise the officers in his unit.

c. Two officers under RIDEAU's command made him aware Lieutenant William DeVito had questioned them regarding a decision RIDEAU made about calling off a vehicle pursuit. Lieutenant DeVito made disparaging remarks about RIDEAU being promoted to the rank of Lieutenant. These remarks made the officers uncomfortable and created discord in the chain of command, undermining RIDEAU's credibility within his unit.

d. Further, Lieutenant DeVito and Sergeant Joseph Meyers went into RIDEAU's locked office, while RIDEAU was on vacation, and removed a television, the bracket to hang the television on the wall, the cable cords for the TV, and a chair. Sergeant Myers told RIDEAU he was ordered by Lt. DeVito to remove the property. There was no basis for the removal other than to harass RIDEAU; the television and chair belonged to a fellow officer who had left the items in the office for RIDEAU's use.

e. Finally, Sergeant Adam Meyers accused RIDEAU and Deanna Rideau of stealing $70,000 from City Place during a bomb training session. This allegation was not based in fact and only intended to harass RIDEAU.

54. As a result of the incidents stated in paragraph 53 above, on June 8, 2020, RIDEAU filed a complaint with the CITY's Human Resources Department, stating he was the victim of ongoing harassment and retaliation. RIDEAU asked Human Resources to investigate his concerns in the belief this was the proper procedure for claims of racial discrimination that violated the

CITY's Equal Employment Opportunity Policy (hereinafter "EEO"). It was RIDEAU's understanding based on custom, practice and policy of the CITY that Human Resources would investigate the EEO claims and forward the remaining claims of police procedural misconduct to the Internal Affairs Department within the Police Department. In fact, this is exactly how a prior complaint against RIDEAU made by one of his harassers, Lieutenant Joseph Herb, had been handled in the past. However, the CITY summarily denied all of his claims on November 2, 2020 and administratively closed the investigation. This disparate treatment of RIDEAU, by essentially ignoring his complaints, thereby depriving him due process and the benefit of a full and fair investigation of his claims, is further evidence establishing the CITY's intent to retaliate against RIDEAU and to inflict further retribution impacts upon him.

55.     RIDEAU brings this cause of action, having exhausted all other avenues of redress, both internally and through the CITY's Human Resources department, the EEOC and FCHR.

**COUNT I – EMPLOYMENT DISCRIMINATION FEDERAL CLAIM**

56.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 55, inclusive, as if fully set forth herein.

57.     The CITY is vicariously responsible for all actions and omissions of its employees who were acting within the course and scope of their employment at the time of said action or omission, including Defendants SWIDERSKI and MOONEY.

58.     The targeted actions taken by the CITY against RIDEAU described herein involve disparate treatment, and were done with the purpose of harassment, to prevent his promotion within the Police Department and even to have him criminally prosecuted.

59.     The City violated RIDEAU's rights as a law enforcement officer under §112.532 in IA-18-001.

60. The City violated RIDEAU's rights as a law enforcement officer under §112.532 in AI-18-056

61. These actions were taken against RIDEAU because he is an African American, and he married a white female officer.

62. The CITY had the authority and ability to investigate and to punish officers and command staff for acts of racial discrimination against RIDEAU but failed to do so.

63. The actions of discrimination against RIDEAU while employed by the CITY due to his race are in direct violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e).

64. As a result of CITY's violations of Title VII of the Civil Right Act of 1964, RIDEAU suffered damages, including lost wages, loss of future earning capacity, mental pain and suffering and loss of capacity to enjoy life.

WHEREFORE, Plaintiff, RIDEAU, demands judgment against Defendant CITY for compensatory and punitive damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 2000(e)(5)(k), back and front pay, special damages in the form of any other economic damages permitted under federal law including past and future medical and therapy expenses, and any other relief which the Court determines is appropriate.

## COUNT II- RETALIATION FEDERAL CLAIMS

65. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 55, inclusive, as if fully set forth herein.

66. RIDEAU was engaged in activity protected under federal law when he filed his charge of discrimination with the EEOC against the CITY on September 20, 2019.

67. Thereafter RIDEAU was subjected to adverse employment action when:

a. His locked office was entered, and property was removed from the office. Upon reporting of the incident, no actions were taken against the co-workers who disturbed his office and harassed him.

b. He was formally accused of stealing $70,000, without merit. When RIDEAU complained, no actions were taken against the co-worker who made the baseless allegation.

c. He was prevented from hiring his wife, a Sergeant who was eligible for the overtime position, despite a custom and practice within the agency of Lieutenants being able to freely choose which Sergeants to hire for overtime shifts.

d. When RIDEAU complained of the above incidents of harassment he was denied due process, investigation and protection, under the CITY's EEO policy, following his June 8, 2020 complaint, when the complaint was summarily dismissed by the CITY, with retaliatory intent in response to RIDEAU's filing the EEOC charge on September 20, 2019.

68. These adverse employment actions taken against RIDEAU would not have occurred but for his participation in the protected activity of filing a charge of discrimination with the EEOC. The adverse employment actions taken by the CITY were retaliation for RIDEAU's filing a charge of discrimination, prohibited by 42 U.S.C. § 2000(e)(3)(a) and 29 U.S.C.A. § 215.

69. As a result of Defendant CITY's violations of Title VII of the Civil Right Act of 1964, and 29 U.S.C.A. § 215, RIDEAU suffered damages, including lost wages, loss of future earning capacity, mental pain and suffering and loss of capacity to enjoy life.

WHEREFORE, Plaintiff, RIDEAU, demands judgment against Defendant CITY, for compensatory and punitive damages, costs reasonable attorneys' fees pursuant to 42 U.S.C. § 2000(e)(5)(k), back and front pay, special damages in the form of any other economic damages permitted under federal law, and any other relief which the Court determines is appropriate.

## COUNT III- EMPLOYMENT DISCRIMINATION STATE CLAIM

70.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 55, inclusive, as if fully set forth herein.

71.     Defendant CITY is vicariously responsible for all actions and omissions of its employees who were acting within the course and scope of their employment at the time of said action or omission, including Defendants SWIDERSKI and MOONEY.

72.     The targeted actions taken by the CITY against RIDEAU described herein involve disparate treatment, and were done with the purpose of harassment, to prevent his promotion within the Police Department and even to have him criminally charged.

73.     The City violated RIDEAU's rights as a law enforcement officer under §112.532 in IA-18-001.

74.     The City violated RIDEAU's rights as a law enforcement officer under §112.532 in AI-18-056

75.     These actions were taken against RIDEAU because is an African American, and he married a white female officer.

76.     The CITY had the authority and ability to investigate and punish officers and command staff for acts of racial discrimination against RIDEAU but failed to do so.

77.     The actions of discrimination against RIDEAU due to his race that have occurred while he has been employed by the CITY are in direct violation of Chapter 760, Florida Statutes, known as the "Florida Civil Rights Act of 1992", the general purpose of which is

> to secure for all individuals within the state freedom from discrimination because of race, color, sex, pregnancy, national origin, age handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full protective capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

78.     As a result of Defendant CITY's violations of the Florida Civil Rights Act of 1992, RIDEAU suffered economic and non-economic damages.

WHEREFORE, Plaintiff, RIDEAU, demands judgment against Defendant CITY, for compensatory damages including lost wages, loss of future earning capacity, mental anguish and loss of dignity, costs and reasonable attorneys' fees pursuant to Florida Statutes Section 760.11(5), and any other relief which the Court determines is appropriate.

## COUNT IV– RETALIATION STATE CLAIM

79.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 55, inclusive, as if fully set forth herein.

80.     RIDEAU was engaged in activity protected under federal law when he dual filed his charge of discrimination with EEOC and FCHR against CITY on September 20, 2019.

81.     Thereafter RIDEAU was subjected to adverse employment action when:

a.  His locked office was entered, and property was removed from the office. Upon reporting of the incident, no actions were taken against the co-workers who disturbed his office and harassed him.

b.  He was formally accused of stealing $70,000, without merit.  When complained, no actions were taken against the co-worker who made the baseless allegation.

c.  He was prevented from hiring his wife for an overtime job, despite a custom and practice within the agency of Lieutenants being able to freely choose which Sergeants to hire for overtime shifts.

d.  When RIDEAU complained of the above incidents of harassment he was denied due process, investigation and protection, under the CITY's EEO policy, following his June 8, 2020 complaint when the complaint was summarily dismissed by the CITY, done with retaliatory intent in response to RIDEAU's filing the EEOC charge on September 20, 2019.

82.     These adverse employment actions taken against RIDEAU would not have occurred but for his participation in the protected activity of filing a charge of discrimination. The adverse employment actions taken by the CITY were retaliation for RIDEAU's filing a charge of discrimination, prohibited by the Florida Civil Rights Act of 1992.

83.     As a result of Defendant CITY's violations of the Florida Civil Rights Act of 1992, RIDEAU suffered economic and non-economic damages.

WHEREFORE, Plaintiff, RIDEAU, demands judgment against Defendant CITY, for compensatory damages including mental anguish and loss of dignity, costs and reasonable attorneys' fees pursuant to Florida Statutes Section 760.11(5), and any other relief which the Court determines is appropriate.

**COUNT V – SWIDERSKI- VIOLATION OF LAW ENFORCEMENT OFFICERS' BILL OF RIGHTS-FLORIDA STATUTES §112.532(3) IA-18-001**

84.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 55, inclusive, as if fully set forth herein.

85.     SWIDERSKI violated RIDEAU's Law Enforcement Officer's Rights by withholding audio recordings from the investigation and surreptitiously recording RIDEAU in violation of Florida Statutes 112.532 and 934.03 (2018).

86.     The actions of SWIDERSKI, which violated RIDEAU's rights as a law enforcement officer under §112.532 on Internal Affairs Investigation 18-001, caused damages in the form of mental distress and anguish, loss of capacity to enjoy life, lost wages and loss of future earning capacity.

WHEREFORE, Plaintiff demands judgment against Defendant SWIDERSKI for compensatory damages, costs, reasonable attorneys' fees and any other relief which this Court deems appropriate.

**COUNT VI – SWIDERSKI- VIOLATION OF LAW ENFORCEMENT OFFICERS' BILL OF RIGHTS-FLORIDA STATUTES §112.532(3)- IA 18-056**

87.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 55, inclusive, as if fully set forth herein.

88.     SWIDERSKI violated RIDEAU's Law Enforcement Officers' Bill of Rights by withholding exculpatory evidence, the IPAR audit, from RIDEAU in violation of Florida Statute 112.532 (2018).

89.     The actions of SWIDERSKI, which violated RIDEAU's rights as a law enforcement officer under §112.532 on Internal Affairs Investigation 18-056, caused damages in the form of mental distress and anguish, loss of capacity to enjoy life, lost wages and loss of future earning capacity.

WHEREFORE, Plaintiff demands judgment against Defendant SWIDERSKI for compensatory damages, costs, reasonable attorneys' fees and any other relief which this Court deems appropriate.

**COUNT VII – MOONEY- VIOLATION OF LAW ENFORCEMENT  OFFICERS' BILL OF RIGHTS-FLORIDA STATUTES §112.532(3) IA-18-001**

90.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 55, inclusive, as if fully set forth herein.

91.     MOONEY violated RIDEAU's Law Enforcement Officer's Rights by withholding audio recordings from the investigation and surreptitiously recording RIDEAU in violation of Florida Statutes 112.532 and 934.03 (2018).

92.     MOONEY further violated RIDEAU's Law Enforcement Officer's Rights by demoting him from his position as Sergeant of the Investigative Services Bureau, Organized Crime Section, prior to the conclusion of the internal affairs investigation and any findings of wrongdoing, thus punishing RIDEAU merely for the allegations contained in the complaint.

93.     The actions of MOONEY, which violated RIDEAU's rights as a law enforcement officer under §112.532 on Internal Affairs Investigation 18-001, caused damages in the form of mental distress and anguish, loss of capacity to enjoy life, lost wages and loss of future earning capacity.

WHEREFORE, Plaintiff demands judgment against Defendant MOONEY for compensatory damages, costs, reasonable attorneys' fees and any other relief which this Court deems appropriate.

## COUNT VIII – MOONEY- VIOLATION OF LAW ENFORCEMENT OFFICERS' BILL OF RIGHTS-FLORIDA STATUTES §112.532(3)- IA 18-056

94.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 55, inclusive, as if fully set forth herein.

95.     MOONEY violated RIDEAU's Law Enforcement Officers' Bill of Rights by withholding exculpatory evidence, the IPAR audit, from RIDEAU in violation of Florida Statute 112.532 (2018).

96.     The actions of the, MOONEY which violated RIDEAU's rights as a law enforcement officer under §112.532 on Internal Affairs Investigation 18-056, caused damages in the form of mental distress and anguish, loss of capacity to enjoy life, lost wages and loss of future earning capacity.

WHEREFORE, Plaintiff demands judgment against Defendant MOONEY for compensatory damages, costs, reasonable attorneys' fees and any other relief which this Court deems appropriate.

## JURY DEMAND

A demand for a jury trial is hereby made.

Dated: December 23, 2020.

s/ Guy Bennett Rubin, Esq.
Guy Bennett Rubin, Esq. (Florida Bar No. 691305)
grubin@rubinandrubin.com
service@rubinandrubin.com
Todd Norbraten, Esq. (Florida Bar No. 056605)
tnorbraten@rubinandrubin.com
service@rubinandrubin.com
Keri Smith Norbraten (Florida Bar No. 640727)
knrorbaten@rubinandrubin.com
service@rubinandrubin.com
Rubin & Rubin
2055 S. Kanner Hwy.
Stuart, Florida 34994
Telephone: (772) 283-2004
Facsimile: (772) 283-2009
*Attorneys for the Plaintiff*