UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:20-CV-82406-AMC

GREGORY RIDEAU,

Plaintiff,

v.

CITY OF WEST PALM BEACH, a
Florida municipal corporation

Defendant.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
<u>STATEMENT OF UNDISPUTED MATERIAL FACTS DE27</u>**

Plaintiff, Gregory Rideau, by and through the undersigned counsel, files this in Opposition to Defendant City of West Palm Beach's Statement of Undisputed Material Facts, and states:

**Background**

1. Undisputed.
2. Undisputed.
3. Undisputed.
4. Undisputed.
5. Undisputed.
6. Undisputed.
7. Undisputed.
8. Undisputed.
9. Undisputed.
10. Undisputed.

11. Undisputed.

12. Undisputed.

13. Undisputed.

## 2016 Promotional Opportunity

14. Undisputed.

15. Undisputed.

16. Undisputed.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Disputed. Plaintiff provided the Facebook posts of Herb to Swiderski who was conducting the IA during the investigation in response to Herb's claims that Plaintiff was accusing him of being a racist. The Facebook posts were evidence that Herb feels because he is white, he is accused of being a racist, a persecution complex, that was lost on Defense counsel and not included in the 2016 IA investigation by Swiderski. (DE 27-A: Deposition of Plaintiff, P. 89:3- 95:12; Herb Facebook posts attached hereto as Exhibits "A" and "B").

21. Undisputed.

22. Disputed. In 2016, Plaintiff failed the Lieutenant promotional test by one point. He did not receive the benefit of any test curve. During that same promotional process, certain questions were eliminated after scores came out, allowing for other officers to get promoted in rank, including Emily Wiggs, a white female. (DE 27-B: Deposition of Assistant Chief Tameca West, P. 64:6- 65:25)

## Sexual Harassment Complaint

23. Undisputed, but see additional facts paragraphs 53-55.

24. Undisputed.

25. Undisputed, but see additional facts paragraphs 56-63.

26. Undisputed.

27. Disputed. Sarah Burgoon-Yoos testified that all comments she felt amounted to sexual harassment were sent via Facebook Messenger, she agreed messages can be taken out of context, she was never asked to do anything inappropriate, she was selected for the hostage negotiations team by Plaintiff despite never taking him to dinner, and she did not preserve the messages and did not wish to make a formal complaint against Plaintiff. (DE 43: Deposition of Detective Sarah Burgoon-Yoos, P. 65:2 – 70:4)

28. Undisputed, but see additional facts paragraphs 56-63.

29. Undisputed, but see additional facts paragraphs 53-54.

30. Undisputed, but see additional facts paragraphs 56-63.

31. Disputed as to 180-day limitation. See Fla. Stat. §112.532(6) attached hereto as Exhibit "C".

32. Undisputed.

33. Undisputed.

34. Undisputed.

35. Undisputed, but see additional facts paragraph 64.

36. Undisputed.

## Confidential Informant Recording

37. Undisputed, but see additional facts paragraphs 65-71.

38. Undisputed, but see additional facts paragraphs 65-71.

3

39. Undisputed, but see additional facts paragraphs 65-71.

## Overtime Theft Allegations

40. Undisputed, but see additional facts paragraphs 76-88.

41. Disputed. The Audit covered all areas of OCDETF funding, including Plaintiff's timesheets and work with OCDETF, the basis of Ravelo's complaint given to Mooney. (DE 42: Deposition of Captain Wrobbel, P. 32:2-33:21). Defendant was very aware of when OCDETF audits were being conducted, throughout chain of command, including the Chief of Police. (DE 42: P. 15:6 – 18:16). The Audit was completed July 29, 2018 and Defendant was provided the report prior to April of 2019. (See OCDEFT IPAR for Fiscal Year 2018, attached hereto as Exhibit "D" and DE 44: Deposition of Captain Brain Kapper, P. 19:2 – 20:7). See additional facts paragraphs 76-88.

## Medical Leave of Absence

42. Undisputed, but see additional facts paragraphs 72 and 73.

43. Undisputed, but see additional facts paragraphs 89 – 94.

44. Undisputed.

45. Undisputed, but see additional facts paragraphs 89-94.

46. Undisputed that Plaintiff never underwent a fitness for duty exam with a City approved Psychiatrist. See additional facts paragraph 94.

## September 2019 EEOC Charge

47. Undisputed.

48. Undisputed.

## June 2020 Human Resources Complaint

49. Undisputed.

## Treatment of Comparators

50. Disputed. "I said, Well, they did it to Captain Maale. I said, SEAL Team Six. I said, They got Captain Maale. They took him from Captain all the way to an officer. And I said, They set him up with Cognetti. I said, He's a white guy. I said, Wat do you think they're going to do to a black guy like me, who they don't care about?". (DE 27-A, Deposition of Plaintiff, P. 183:20-184:1).

51. Disputed. "Travis Limauro, he was a white male, and he ended up getting fired for drinking or something,". (DE 27-A, P. 206:8-9).

52. Undisputed, but see additional facts

## Additional Facts

53. In October of 2017, Plaintiff was supervising a search warrant of a home in search of narcotics and cash from sales of narcotics. Plaintiff was supervising agent Zachary Immler and agent Elainy Ravelo Marte, amongst others, during this search warrant. During the execution of the warrant, Agent Immler stole money from the home. Agent Ravelo became aware of the theft and when confronted by Plaintiff and Captain Brian Kapper, she initially did not tell the truth on what she knew. Plaintiff became upset and felt he could no longer trust her in his unit. She was allowed to stay in the unit and faced no further discipline from the incident. (DE 44: Deposition Transcript of Brain Kapper, P. 9:8-13:18).

54. Shortly after Agent Immler was terminated, Agent Ravelo lodged her sexual harassment complaint against Plaintiff. (DE 27-B: Deposition of Assistant Chief Tameca West, P. 88:3-89:11).

55. On March 1, 2018, Agent Ravelo made allegations of sexual harassment against Plaintiff for the first time. On March 6, 2018, she wrote a memo to Chief Mooney describing the earliest incident of sexual harassment being on December 8, 2016, 16 months before she first complained. (IA18-001 Investigative Report, P. 2, Exhibit G).

56. Agent Ravello gave her first statement to IA investigator Michael Oswald on March 27, 2018. Also present as an advocate for Agent Ravelo, at the order of Chief Mooney, was Sergeant Lori Colombino, a Special Victims Unit officer with WPBPD. This is the first and only time during an internal sexual harassment investigation that a member of WPBPD Special Victims Unit ever participated. (See Exhibit G at P. 3; DE 27-B, P. 30:19-34:8).

57. Typically, during an IA statement, an officer will have an attorney or a union representative with them during the statement, but Chief Mooney put Sgt. Colombino there as an advocate, because she says Agent Ravelo was concerned she was going to be blackballed and didn't want the union to be there. (DE 27-C, P. 16:16-2).

58. This is testimony of Chief Mooney not truthful, as the investigator notes in the IA Report, Agent Ravelo requested to have union representation during her statement, and union president Sgt. Dennis Hardiman was present, along with Sgt. Colombino. (Exhibit G, P.3).

59. After being inserted by Chief Mooney as an advocate for Ravelo, Sergeant Colombino made herself a witness to the investigation, and gave a statement, to corroborate the statements given by Agent Ravelo, statements she sat in on as the advocate. (Exhibit G, P.16 and 21).

60. Following Ravelo's first statement, Chief Mooney requested to meet with the Plaintiff in her office to discuss the investigation, though this was not part of the formal IA investigation. Plaintiff wanting to put an end to the nonsense agreed to meet and discuss on April 13, 2018. (DE 27-C: Deposition of Chief Mooney, P. 17:17-18:23; 21:13-22; DE 27-A: Deposition of Plaintiff, P. 181:12-187:14).

61. Within hours of Plaintiff's meeting with Chief Mooney, Agent Ravelo gave a second statement, prior to Plaintiff giving his first statement, but with Agent Ravelo including specific facts that would only be known if she had learned of the discussion between Plaintiff and Chief

Mooney earlier that day. Present at the second statement was Sgt. Colombino and a union representative, and this statement was taken by Captain Swiderski, not Investigator Oswald. (IA 18-001 Report, P. 16).

62. When Sgt. Colombino gave her statement on April 19, 2018, she had first-hand knowledge of Agent Ravelo's statements, which she was corroborating. (IA 18-001 Report, P. 21).

63. Following Sgt. Colombino's corroboration, Plaintiff was removed from his narcotics unit and placed on road patrol by Chief Mooney, despite no formal conclusion to the IA investigation. (Defendant's Statement of Facts, paragraph 28).

64. In 2018, Plaintiff finished at the top of the class for lieutenant promotions, yet was passed over by Chief Mooney, due to the ongoing IA investigations 18-001 and 18-056, which were ordered by Chief Mooney and directed by Captain Swiderski. Chief Mooney skipped over Plaintiff and promoted Michael Oswald to lieutenant, after then Sgt. Oswald conducted the sexual harassment investigation into Plaintiff in IA 18-001. (See Human Resources Eligibility Roster, attached as Exhibit F; DE 27-C: P. 7:16-10:14; DE 45: Deposition of Michael Oswald, P. 7:8-12; P. 19:10-20:16).

65. On or about April 18, 2018, Plaintiff placed a cell phone call to a known confidential informant ("CI") he used to work, to advise him that he was no longer going to be in the narcotics unit. Plaintiff explained to the CI that Agent Ravelo had told lies about him sexually harassing her and that was why he was no longer in the unit. Unbeknownst to Plaintiff, a few months earlier, Agent Matthew Steinberg of WPBPD had placed an application on the phone of the CI that recorded all incoming and outgoing calls. This was app was placed on the phone without a warrant and was done without any mitigation efforts to avoid interception of communications that were not related to any criminal investigation. Plaintiff was never under investigation, nor was Agent

Steinberg seeking to obtain any evidence of any crime from Plaintiff's call. (DE 30: Deposition of Agent Steinberg, P.41:6-46:20).

66. It is the Plaintiff's position that this recording was made in violation of Florida's wiretap law, Statutes §934.03. (See Statute §934.03 Exhibit H).

67. This recorded conversation came into possession of Agent Steinberg, who upon hearing it took it to Captain Brain Kapper, who advised Agent Steinberg to go to Internal Affairs. (DE 30: Deposition of Agent Steinberg, P.65:24-66:25).

68. Once at internal Affairs, Captain Swiderski and other members of IA listened to the recording. Chief Mooney was called in to listen to the recording and IA made a copy of the audio recording that was playing off Agent Steinberg's phone. (DE 30: Deposition of Agent Steinberg, P.67:7 – 68:4).

69. Only one officer taking part in this listening meeting seemed concerned about how the recording came to be, that a CI had recorded a phone call from a WPBPD officer, who was not under investigation for any crime, without direction of law enforcement to do so. Detective Brain McDaniel, who was working in IA, the only black officer in the room when the audio recording was playing, voiced his concerns that it was an illegal recording. Chief Mooney and Captain Swiderksi heard Detective McDaniel and were not concerned about the illegality. (DE 41: Deposition of Detective McDaniel, P. 42:1- 44:19).

70. Captain Swiderski proceeded to make a copy of the recording and maintained it, on the orders of Chief Mooney, who did not initiate any investigation into the creation of the recording or its contents. (DE 27-C: P. 25:14-30:10).

71. Chief Mooney determined the recording was not related to the IA investigation, despite a statement from Plaintiff denying the sexual harassment allegations on the recording, so it was

never turned over to Plaintiff during the IA, in violation of Plaintiff's Police Officer's Bill of Rights. (DE 27-C: P. 30:11-33:16 and Exhibit C).

72. As Defendant points out in paragraph 38 of their statement of facts, on the recroding, Plaintiff discusses going to a therapist and hiring a lawyer to sue the City for how they have treated him. Captain Swiderski heard this recording in IA around April 18, 2018, and then on April 24, 2018, he met with Plaintiff to explain the EAP program, where Plaintiff could go seek therapy through WPBPD. (See Rideau Officer Incident Log note by Brian Kapper, Exhibit "I" and DE 44: Deposition of Captain Kapper, P. 33:14-36:10).

73. During his deposition, Captain Swiderski denied ever meeting with Plaintiff to discuss EAP. (DE 27-D: Deposition of Captain Swiderski, P. 42:18-43:24).

74. At the conclusion of the investigation into IA 18-001, Chief Mooney determined there was a preponderance of evidence to show sexual harassment and ordered Plaintiff receive an 80-hour suspension. Plaintiff requested a pre-disciplinary hearing, which was held on October 30, 2018. (See Memo dated 11/1/18, Exhibit O).

75. Following the hearing, Plaintiff's suspension was upheld, Plaintiff moved for arbitration, which was never held due to Chief Adderley's reversal of the findings of Chief Mooney. (See IA18-001 timeline, Exhibit J).

76. In April of 2018, during the investigation into IA 18-001, Agent Ravelo made allegations of Plaintiff receiving pay for working an overtime detail at City Place, during the same hours he was working for organized crime drug enforcement task force ("OCDETF") and being paid by Department of Justice grant money. (DE 27-C: P. 39:11-41:19; IA18-056 report Exhibit K).

77. Chief Mooney ordered Captain Swiderski to try and obtain records from City Place, who refused to cooperate. (See E-mail from Joseph Ianno, Esq., dated 4/10/18, Exhibit L).

78. OCDETF sent an auditor to WPBPD on April 16, 2018, to conduct an audit on the Department and the officers working on the task force. (See Visitor Log 4/16/18, Exhibit M and OCDETF report, Exhibit D; Deposition of Captain Kapper, P.16:1-20:7; DE 42: Deposition of Captain Wrobbel, P. 15:6-18:16).

79. ODETF's report did not identify Plaintiff as having done anything improper, yet it was not provided to Detective Brain McDaniel who was assigned to investigate the Plaintiff's alleged double dipping in IA-0056. Further, City place never provided any information alleging Plaintiff has stolen any overtime. (DE 41: P. 31:1-32:2).

80. Chief Mooney had Captain Swiderski and Detective McDaniel present the allegations of double dipping to the State Attorney's Office Public Corruption Unit, seeking criminal charges against Plaintiff. Further, the State Attorney was not provided the OCDETF report, or the made aware that DOJ conducted an audit. (Deposition of Chief Mooney, P. 48:22- 56:8).

81. The meeting with the State Attorney's office, where Captain Swiderski was seeking criminal charges against Plaintiff occurred on October 30, 2018, the same day Plaintiff has before the pre-disciplinary hearing on IA 18-001. (Exhibit J, P. 4).

82. Ultimately, the State Attorney's office declined to prosecute, and Chief Mooney then started a formal internal investigation. (Exhibit K, P. 3).

83. Once given the task of investigating, Detective McDaniel within a couple weeks had cleared up six of the alleged eight dates of overtime theft. The other two dates were not Overtime theft, but rather Plaintiff using the scheduling program to trade jobs with his wife and another officer. (Deposition of Detective McDaniel, P. 19:6-22:19).

84. The internal investigation, only based on the complaint of Agent Ravelo in April of 2018, was concluded on March 24, 2019, where Plaintiff ultimately received a verbal counseling from Chief Mooney. (Exhibit K, P. 1).

85. While the allegations against Plaintiff's actions were directed by Chief Mooney to be brought to the State Attorney's office for possible criminal charges, there were three white male officers who were identified in the ODETF audit report for overtime billing issues. They were not sent to the State Attorney to check for criminal charges, nor were any of the three investigated or disciplined internally by Chief Mooney. (DE 27-F: Deposition of Captain Joseph Ahern, P. 55:4-56:21).

86. Plaintiff only became aware of the OCDETF audit and subsequent report in 2019, after the conclusion of IA-0056. Assistant Chief Tameca West ordered Captain Dennis Wrobbel to obtain a copy of the ODETF report for Plaintiff. (DE 42: P. 28:3-29:19).

87. Captain Wrobbel's contact at OCDETF indicated that she had previously sent the audit to WPBPD. (DE 42: P. 29:20-30:12).

88. After obtaining the OCDETF report, Captain Wrobbel was questioned by Captain Swiderski about the report and who had asked him to get a copy of it. Later in the day Captain Wrobbel overheard Captain Swiderski tell Chief Mooney "hey I think we have a problem" as West got a copy of the OCDETF audit. (DE 42: P. 35:12-37:14; 39:23-40:22 and Eratta Sheet signed by Captain Wrobbel attached as Exhibit "E").

89. In March of 2019, just around the time Plaintiff received his verbal counseling for IA-0056, Plaintiff was cleared by his private doctor and the city health clinic to return to work on full duty following an intermittent FMLA leave of absence. (Defendant's statement of facts paragraph 43).

90. City of West Palm Beach Human Resources Benefits Coordinator Jennifer Chirpczuk called Kelly Adelberg, the Chief of Operations for the City of West Palm Beach Employee Health Clinic and requested that the clinic call Plaintiff back into the clinic to receive another it for duty evaluation. Further, Ms. Chirpczuk explained that the clinic should conclude in the evaluation that Plaintiff was not fit for duty and thereafter refer him to a City approved psychiatrist for evaluation of his fitness for duty. (DE 40: Deposition Transcript of Kelly Adelberg, P. 12:7 – 16:20).

91. When Mrs. Adelberg responded that she was not comfortable failing him and referring him to a psychiatrist, particularly after her husband, the medical director of the clinic, reviewed the chart and had no concerns for Plaintiff's fitness for duty, Ms. Chripczuk told her Plaintiff's supervisors were concerned because he was agitated at work. (DE 40: P. 19:13 – 20:9).

92. Ms. Adelberg testified this the only time the City has ever requested her clinic to pull an employee back into the clinic and fail them on a fitness for duty. (DE 40: P. 24:4-16).

93. There is proper channel for Plaintiff's supervisors to have him evaluated if they have a legitimate concern that he is unfit for duty, but they did not follow the proper procedure with Plaintiff. (DE 40: P.30:22-32:12).

94. Following Ms. Adelberg's refusal, Ms. Chirpczuk attempted to direct Plaintiff to psychiatric evaluation, without any formal basis for doing so, and was only stopped by doing so once Plaintiff and his Union attorney challenged the evaluation. (See Exhibit N; Emails dated June 12, 2019).

95. Plaintiff, Gregory Rideau is a black man, and his wife Deanna Rideau, a white woman, were married in 2010. Deanna is a Sergeant with WPBD. They are the only married couple amongst WPBPD officers consisting of a black man married to a white woman. Officers in

WPBPD had a problem with the mixed-race marriage. (DE 39: Deposition Transcript of Jeff Green, P. 25:1-11; DE 27-B: Deposition of Assistant Chief Tameca West, P. 42:10-43:17).

96. According to Detective Brain McDaniel, a black man working in the WPBPD, black officers are treated differently than white officers and it has been more difficult for him personally to get promotions than it seems to be for white officers to get promotions. (DE 41: Deposition of Detective Brian McDaniel, P. 47:4- 48:6).

97. In February of 2017, Sarah Mooney became Chief of WPBPD. (DE 27-C: Deposition of Sarah Mooney, P. 6:13-15).

Dated: March 23, 2022

/s/ Todd Norbraten
Todd Norbraten, Esq. (Florida Bar No. 056605)
tnorbraten@rubinandrubin.com
service@rubinandrubin.com
Keri Smith Norbraten, Esq. (Florida Bar No. 640727)
knorbraten@rubinandrubin.com
service@rubinandrubin.com
Rubin & Rubin
2055 S. Kanner Hwy.
Stuart, Florida 34994
Telephone: (772) 283-2004
Facsimile: (772) 283-2009
*Attorneys for the Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:20-CV-82406-AMC

GREGORY RIDEAU,

Plaintiff,

v.

CITY OF WEST PALM BEACH, a
Florida municipal corporation

Defendant.

_____

## Certificate of Service

      I hereby certify that on March 23, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                        /s  Todd S. Norbraten
                        TODD S. NORBRATEN, ESQ.

**SERVICE LIST**
*Gregory Rideau*
*vs.*
*City of West Palm Beach*
**CASE NO: 9:20-cv-82406-AMC**
United States District Court, Southern District of Florida

**Counsel for City of West Palm Beach**
*Service via transmission of Notices of Electronic Filing generated by CM/ECF*

David M. Gobeo, Esq.
FORD & HARRISON LLP
1450 Centrepark Blvd., Ste 325
West Palm Beach, FL 33401
dgobeo@fordharrison.com